USDC- BALTIMORE
'26 NOV 13 PM3:39

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

JOHN DOE,
Plaintiff,

v.

SINAI HOSPITAL OF BALTIMORE, INC.,
LIFEBRIDGE HEALTH, INC.,
SARAH STEINBERG SEIDEL, a Sinai Hospital Board Member,
MATTHEW S. STURTZ,
DEAN G. LAPONZINA,
KAITLIN O'DOWD,
KAITLYN N. LYONS,
AMY STEINBERG,
SCOTT STEINBERG, and
JOHN/JANE DOES 1-10,
Defendants.

**Civil Action No.**
~~ABA 26-~~cv-4734

**JURY TRIAL DEMANDED**

**COMPLAINT FOR VIOLATION OF THE STORED COMMUNICATIONS ACT;**

**RELATED MARYLAND PRIVACY AND TORT CLAIMS; DECLARATORY AND**

**INJUNCTIVE RELIEF; AND JURY DEMAND**

Plaintiff John Doe, proceeding self-represented, alleges as follows:

## I. INTRODUCTION

1. Defendant Sarah Steinberg Seidel is a Maryland attorney currently associated with Saul Ewing LLP, recently employed in the Baltimore office of Nelson Mullins Riley & Scarborough LLP, and currently listed by LifeBridge Health as a member of the Sinai Hospital Board.

2. This action concerns an alleged four-year and continuing course of stalking or monitoring, harassment, exploitation of information obtained without authorization, misuse of confidential medical information, manipulation of third persons and institutions, and deliberately harmful conduct by Steinberg Seidel.



HD
Rcv'd by: AR

3. Steinberg Seidel remained involved in Plaintiff's private affairs long after any legitimate reason for involvement ended.

4. That alleged focus extended to Plaintiff's private communications, relationships, professional affairs, legal matters, reputation, personally identifying information, religious-discrimination complaints, and confidential medical circumstances.

5. Plaintiff alleges that Steinberg Seidel's objective was not merely to embarrass, inconvenience, frighten, or distress him. Plaintiff alleges that she deliberately sought to make him medically ill, to aggravate a private medical vulnerability, and to cause lasting or permanent harm to his health, functioning, education, professional development, and ability to protect himself.

6. Plaintiff therefore alleges an extraordinary degree of malice maintained over an extraordinary period of time.

7. Plaintiff alleges that severe medical deterioration and permanent harm were intended objectives of the course, and that the alleged conduct was continued despite a grave and foreseeable risk of catastrophic injury or death.

8. Plaintiff alleges that the conduct nevertheless continued for approximately four years and has not voluntarily ceased despite repeated direct demands that Steinberg Seidel disengage completely.

9. The course involved concealment and the use of third persons, attorneys, professional resources, accounts, and institutional channels, allowing the conduct to reach Plaintiff while obscuring Seidel's role.

10. Seidel repeatedly inverted the roles of aggressor and victim: harassment was concealed, Plaintiff's attempts to document and stop it were isolated from their context, and others were falsely told that Seidel was the victim.

11. Persons around Seidel accepted and repeated that portrayal without examining the underlying conduct, lending it credibility and helping the course continue.

12. Repeated demands to disengage and notices to relevant persons and institutions did not stop the course. Enforceable judicial intervention is necessary.

13. Concealed agency, selective disclosure, denials, and third-party activity created uncertainty for Plaintiff and led outsiders to doubt his reports while visible injury worsened.

14. The repetition, concealment, and developed methods experienced by Plaintiff raise the question whether similar conduct occurred in prior settings.

15. Plaintiff does not presently allege as an established fact that unidentified prior victims exist, and he does not allege without evidence that any particular prior accusation made by Steinberg Seidel against another person was false.

16. Discovery may reveal similar methods involving other disputes, relationships, or institutions in which an alleged aggressor claimed to be the victim after concealing prior conduct.

17. LifeBridge and Sinai received repeated written notice that a current Sinai board member was allegedly involved in harassment, private-information misuse, medical-privacy issues, and conduct causing serious harm.

18. LifeBridge's Chief Compliance Officer initially asked Plaintiff to identify the board member "so we can take action" and later stated that LifeBridge would be "happy to investigate" upon receipt of the identity and relevant facts.

19. Plaintiff identified Seidel and described harassment, medical privacy, identifying information, governance, conflicts, safety, and preservation concerns.

20. LifeBridge/Sinai confirmed preservation but did not identify a meaningful access-log, privacy, governance, conflict, or independent review or protective restriction.

21. This action principally concerns the alleged unauthorized acquisition of private electronic information, the concealed movement of that information to others, its alleged receipt or exploitation by Steinberg Seidel, and its later use as an instrument to inflict increasingly personalized, medically dangerous, and deliberately destructive harm.

22. Plaintiff seeks retrospective relief for the harm already suffered and prospective relief to identify participants, preserve records, stop further unauthorized access or use, and terminate a course he alleges has demonstrated an unwillingness to end voluntarily.

23. Seidel acted as though entitled to Plaintiff's private life, including photographs, confidential medical information, identifying information, and communications he never provided to her.

24. Seidel impersonated Plaintiff or directed and benefited from online activity purporting to originate from him and disseminated nonpublic information to further the harassment.

## II. AT A GLANCE

25. The following figures summarize Plaintiff's allegations for orientation. They are not evidence and do not substitute for the numbered allegations or the elements of any claim.



Figure 1. Alleged Information-to-Harm Chain. Summary orientation only; the numbered allegations control.

## III. JURISDICTION, VENUE, AND JOINDER

26. This Court has original federal-question jurisdiction under 28 U.S.C. § 1331 because Count I arises under the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 and 2707.

27. Section 2701 prohibits specified intentional unauthorized access to a facility through which an electronic communication service is provided where the actor thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage.

28. Section 2707 authorizes a civil action by a subscriber or other person aggrieved by a knowing or intentional violation of Chapter 121 and authorizes appropriate equitable relief, damages, and litigation costs subject to the statute and controlling precedent.

29. Plaintiff was the subscriber and authorized user of the private Google account and remotely stored information allegedly accessed.

30. The federal claim is asserted against Accessor Does 1-3, presently unidentified persons whose identities and access methods Plaintiff alleges can be determined through focused provider, device, and communications discovery. See Schiff v. Kennedy, 691 F.2d 196, 197-98 (4th Cir. 1982).

31. The Fourth Circuit has held that previously opened and delivered messages stored by a web-based email provider may remain within the SCA's protected electronic storage. Hately v. Watts, 917 F.3d 770, 785-91 (4th Cir. 2019).

32. Plaintiff recognizes that the SCA count depends upon proof that an Accessor Doe intentionally reached a provider-side facility and thereby obtained a qualifying electronic communication in electronic storage.

33. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the related Maryland claims because they derive from the same alleged acquisition, transfer, possession, concealment, exploitation, and continuing use of Plaintiff's private information.

34. The claims share common factual questions concerning who accessed Plaintiff's information, what was obtained, how it moved, who later possessed it, what systems or resources were used, what each Defendant knew, and how the information was allegedly used.

35. The Defendants are joined under Federal Rule of Civil Procedure 20 because the claims arise out of the same alleged series of transactions or occurrences and present common questions of fact and law.

36. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Baltimore, Maryland, including the alleged initial access while Plaintiff was a University of Baltimore law student and later institutional conduct in Maryland.

37. Personal jurisdiction exists over the Maryland-based Defendants and over each Doe Defendant whose alleged access or Maryland-directed conduct caused injury in Maryland.

38. With respect to Amy and Scott Steinberg, Plaintiff asserts only such personal jurisdiction as is supported by each parent's own Maryland contacts or purposeful Maryland-directed conduct, if proven. Neither familial relationship nor financial support alone establishes personal jurisdiction. Their domicile, service addresses, and specific Maryland-directed activities require verification.

## IV. PSEUDONYMITY AND PROTECTION OF MEDICAL INFORMATION

39. Plaintiff contemporaneously moves for permission to proceed as John Doe and to submit identifying and residential information through a sealed or otherwise protected procedure directed by the Court.

40. This action necessarily concerns confidential medical-evaluation information, private electronic communications and files, personally identifying information, confidential complaints, alleged stalking, and allegations that disclosure itself was used to intensify harm.

41. Plaintiff has experienced disclosure in litigation.

42. Publicly reproducing Plaintiff's detailed medical information would risk replicating the privacy injury that forms part of this action and is unnecessary to fair notice of the claims.

43. Plaintiff therefore pleads the existence, use, and alleged consequences of the confidential medical information and will provide protected particulars if required.

44. Plaintiff recognizes the strong public interest in open judicial proceedings and requests only the narrow protection necessary to prevent the public filing itself from becoming a vehicle for further dissemination of the sensitive information at issue.

## V. PARTIES AND ADDRESSES

45. Plaintiff John Doe is an adult resident of Maryland. His identity, home address, and county of residence are tendered through the contemporaneous pseudonym/sealing procedure requested from the Court.

46. Defendant LifeBridge Health, Inc. is a Maryland healthcare system headquartered at 2401 W. Belvedere Avenue, Baltimore, Maryland 21215.

47. Defendant Sarah Steinberg Seidel is an adult Maryland attorney. Public professional materials currently associate her with Saul Ewing LLP in Baltimore, whose Baltimore office is located at 1001 Fleet Street, 9th Floor, Baltimore, Maryland 21202. LifeBridge Health currently lists Sarah Steinberg Seidel among the Sinai Hospital Board Members.

48. Defendant Matthew S. Sturtz is an attorney who represented Steinberg Seidel in litigation involving Plaintiff while associated with Nelson Mullins. Plaintiff alleges that Sturtz left Nelson

Mullins effective December 31, 2025. Plaintiff will provide the Clerk and process server with the best confirmed current service address available at the time summons is requested.

49. Dean G. LaPonzina is an individual named in connection with the spring 2022 unauthorized use of Plaintiff's computer and the acquisition of private electronic information.

50. Kaitlin O'Dowd is an individual defendant who participated in the course of harassment directed at Plaintiff following the unauthorized computer incident.

51. Kaitlyn N. Lyons is an individual defendant who participated in the course of harassment directed at Plaintiff following the unauthorized computer incident.

52. Defendant Sinai Hospital of Baltimore, Inc. is a Maryland hospital located at 2401 W. Belvedere Avenue, Baltimore, Maryland 21215 and is affiliated with LifeBridge Health.

53. John/Jane Does 1-10 include presently unidentified persons who allegedly accessed, obtained, transmitted, facilitated, retained, disseminated, or knowingly used Plaintiff's private electronic or medical information. Accessor Does 1-3 are the presently unidentified persons alleged to have performed the provider-side access supporting Count I; Medical-Record Does are persons, if any, whose conduct is established to fall within Maryland Health-General § 4-309.

54. Defendant Amy Steinberg is Steinberg Seidel's mother. Plaintiff seeks to hold Amy Steinberg responsible for her alleged funding, provision or control of resources, and any knowing substantial assistance to actionable misconduct, not for her daughter's conduct merely because of their family relationship.

55. Defendant Scott Steinberg is Steinberg Seidel's father. Plaintiff seeks to hold Scott Steinberg responsible for his own alleged funding, provision or control of resources, and any knowing substantial assistance to actionable misconduct, not for his daughter's conduct merely because of their family relationship.

## VI. RELEVANT NONPARTIES

56. Zachary Seidel is Steinberg Seidel's husband and a relevant nonparty whose later alleged knowledge of a private complaint and other nonpublic information forms part of Plaintiff's discovery chronology. Plaintiff further alleges that Zachary Seidel was charged in Maryland in March 2026 with harassment arising from an alleged course of conduct directed toward Plaintiff. Plaintiff alleges that the charge is material surrounding context.

57. Laura Callahan is LifeBridge Health's Chief Compliance Officer and participated in the written intake and response described below. She is not named as a Defendant here.

58. Jason Weiner is publicly identified by LifeBridge Health as Senior Vice President, Chief Administrative Officer and General Counsel. He is not named as a Defendant here.

## VII. RULE 11 AND INFORMATION OUTSIDE PLAINTIFF'S POSSESSION

59. Plaintiff distinguishes between facts personally observed or documented, reasonable inferences from those facts, and matters expected to be established or disproved through discovery.

60. Where Plaintiff alleges a fact on information and belief, the allegation concerns matters substantially within another person's possession, including provider-side access logs, device identifiers, account-session records, law-firm records, hospital audit trails, internal compliance communications, board-governance records, and communications among alleged participants.

61. Plaintiff does not allege that every unfavorable event or every action by a person acquainted with Steinberg Seidel was caused by her. Attribution is alleged only where nonpublic knowledge, timing, recurrence, common participants, similar methods, documentary manifestations, later discoveries, or other objective circumstances support the inference.

62. Each Defendant is alleged liable only for that Defendant's own legally cognizable conduct and state of mind.

## VIII. RELIGIOUS-DISCRIMINATION COMPLAINT AND ORIGIN OF THE DISPUTE

63. In 2022, while attending the University of Baltimore School of Law, Plaintiff engaged in protected complaint activity concerning treatment connected to his religious observance, practices, and customs.

64. In July 2022, the University issued a formal finding sustaining a religious-discrimination complaint.

65. Steinberg Seidel was connected to events underlying the complaint and the dispute between the parties materially intensified following Plaintiff's complaint activity and the institutional finding.

66. Plaintiff alleges that a continuing course of unwanted monitoring, harassment, private-information misuse, reputational inversion, and retaliatory conduct followed.

67. Plaintiff alleges that Steinberg Seidel and persons associated with her repeatedly attempted to recast the chronology so that Plaintiff's responses to the alleged conduct could themselves be characterized as wrongdoing while the alleged preceding conduct was omitted or denied.

68. Plaintiff alleges that this inversion later migrated into legal and institutional channels, thereby increasing both the reach and credibility of the narrative used against him.

## IX. SPRING 2022 CLASSROOM INCIDENT AND PRIVATE ELECTRONIC ENVIRONMENT

69. During a break for religious observance in spring 2022, Dean G. LaPonzina used Plaintiff's unattended computer without Plaintiff's permission.

70. Plaintiff observed activity through interior glass near the place where the computer had been left.

71. LaPonzina appeared to hold a telephone horizontally toward Plaintiff's computer screen. Plaintiff could not see from outside the room whether a remote account was being accessed.

72. When Plaintiff returned, the computer exhibited signs that it had been handled or used during his absence.

73. Plaintiff had not authorized another person to access his computer, Google account, private files, or communications.

74. Plaintiff's private electronic environment included uploaded files, photographs, personally identifying information, confidential institutional complaints, private communications, and confidential medical-evaluation information.

75. The observed unauthorized use established a potential route to Plaintiff's private materials. The extent of provider-side access, copying, photographs, and transmission requires examination of account and device records.

76. In June 2023 Plaintiff confronted LaPonzina about the unauthorized access in writing. LaPonzina denied the allegation and inverted the story.

77. Plaintiff made reports to police and the University.

78. The 2023 reports principally concerned the laptop incident. Evidence emerging in 2025 raised additional concerns about provider-side access and the movement of electronic files to other people.

79. After LaPonzina's unauthorized use of the computer, Sarah Steinberg Seidel, LaPonzina, Kaitlin O'Dowd, and Kaitlyn N. Lyons participated in the ensuing campaign of harassment. The

conduct directed toward Plaintiff included references to Orthodox Jewish observance, religious dress, and religious requests, as well as the exploitation of private information.

## X. LATER MANIFESTATIONS AND PROGRESSIVE DISCOVERY

80. After the 2022 incident, Plaintiff began encountering conduct and nonpublic knowledge that he alleges could not be explained by ordinary public sources alone.

81. Plaintiff alleges that information from private complaints, identifying information, and medical matters later appeared in the possession, statements, conduct, or professional activity of persons associated with Steinberg Seidel.

82. In or around 2025, Plaintiff alleges that Zachary Seidel demonstrated knowledge of a private complaint dating from 2022 that Plaintiff contends had not been formally opened, served, or lawfully disclosed through the ordinary institutional process.

83. Plaintiff alleges that this event was significant because it suggested that information from his private files or communications had moved outside the restricted environment in which he believed it remained.

84. Plaintiff further alleges that materials or communications associated with Sturtz's representation of Steinberg Seidel reflected knowledge of nonpublic information that Plaintiff had not supplied to Sturtz or Seidel.

85. Plaintiff alleges that the combined appearance of multiple nonpublic facts supplied the first meaningful basis to investigate a possible provider-side access-and-transfer chain rather than only a local laptop incident.

86. Plaintiff alleges that he did not discover, and did not have a reasonable opportunity to discover, the particular SCA violation and recipient chain more than two years before this filing.

87. Plaintiff pleads timeliness on the distinction between earlier suspicion of physical device interaction and later discovery of facts suggesting a provider-side violation.

88. Plaintiff seeks focused early discovery concerning Google authentication and access records, device and IP information, account-session records, relevant provider metadata, and communications capable of identifying the Accessor Does and the path by which information allegedly moved.

## XI. ALLEGED INFORMATION FLOW TO STEINBERG SEIDEL

89. Plaintiff did not voluntarily provide his private Google materials, confidential medical evaluation, confidential complaints, or sensitive personally identifying information to Steinberg Seidel.

90. Plaintiff alleges that Steinberg Seidel nevertheless acquired, received, possessed, reviewed, or benefited from nonpublic information concerning him.

91. Plaintiff alleges that she knew or had reason to know that material portions of that information were not public and had not been voluntarily supplied by Plaintiff.

92. Steinberg Seidel did not disclose to Plaintiff what nonpublic information she possessed, how she obtained it, who supplied it, or to whom it had been transmitted.

93. Plaintiff alleges that the resulting informational asymmetry was functional: Steinberg Seidel allegedly possessed private knowledge concerning Plaintiff while Plaintiff did not know what she possessed or where it had gone.

94. Plaintiff alleges that this advantage allowed later conduct to be personalized, timed, or framed around information unavailable to ordinary members of the public and made the conduct more difficult to identify and explain.

## XII. PERSISTENT FIXATION, THIRD-PARTY INSTRUMENTALIZATION, AND VICTIM-AGGRESSOR INVERSION

95. Plaintiff alleges that Steinberg Seidel participated directly or indirectly in a multi-year and recently continuing course directed toward him.

96. The alleged course included stalking or monitoring, harassing electronic activity, deceptive or fictitious identities where supported by the evidence, third-party involvement, manipulation of information associated with Plaintiff's identity, and use of personally identifying, complaint-related, and medical information.

97. Plaintiff has preserved screenshots, messages, search results, correspondence, notices, and other records reflecting the alleged course.

98. Plaintiff alleges that Steinberg Seidel repeatedly used, influenced, recruited, or benefited from other people and instrumentalities controlled by others rather than relying solely upon her own direct communications or property.

99. Plaintiff alleges that selective framing and incomplete disclosure induced some third parties to act without understanding the alleged provenance of the private information or the conduct that preceded Plaintiff's response.

100. Plaintiff alleges that Steinberg Seidel simultaneously portrayed herself to others as a victim, a person responding defensively, or a person uninvolved in the underlying conduct while concealing the alleged information advantage and the conduct directed toward Plaintiff.

101. Plaintiff alleges that this role reversal caused institutions and other third parties to interpret his attempts to report, investigate, or stop the conduct as evidence against him rather than as responses to what he was experiencing.

102. Persons around Seidel reinforced her portrayal as the victim without examining the antecedent conduct or the use of Plaintiff's nonpublic information, enabling the course to continue.

103. In March 2026, Steinberg Seidel's husband, Zachary M. Seidel, was charged in Maryland with harassment arising from an alleged course of conduct directed toward Plaintiff.

104. Seidel's conduct independently featured persistent unwanted contact, third-party activity, concealment, and intent to harm, irrespective of the charge against her husband.

105. Maryland Criminal Law § 3-803 prohibits malicious harassment after a reasonable request to stop and without legal purpose. The continuing course, after repeated demands, supports the requested preservation, injunctive relief, and referral.

106. Plaintiff alleges that the four-year duration is independently significant. A person acting from momentary anger, misunderstanding, or a discrete dispute has repeated opportunities to stop. Plaintiff alleges that Steinberg Seidel instead repeatedly returned to or maintained involvement in his life after any legitimate relationship had ended.

107. Plaintiff repeatedly demanded complete disengagement. Plaintiff alleges that those demands did not produce meaningful voluntary cessation.

108. Plaintiff therefore alleges a persistent fixation upon his private affairs and an apparent unwillingness to leave him alone absent enforceable intervention.

109. The developed, repetitive structure of Seidel's conduct raises a concern that similar methods may have appeared in prior relationships or institutional disputes.

110. Plaintiff specifically alleges that Steinberg Seidel impersonated or caused others to impersonate him through accounts, messages, identity-related activity, or representations to third parties. Plaintiff alleges that the purported impersonation was directed at exposing his personal

affairs, damaging his reputation, or facilitating continued harassment. Plaintiff does not ask the Court to infer her involvement from anonymous activity alone; identification of concrete communications and their source is required.

111. Plaintiff alleges on information and belief that nonpublic photographs and other identifying material were obtained, retained, transmitted, or shown to third parties without his authorization and were used in the alleged course of harassment. Plaintiff alleges that the photographs or their contents became known to persons associated with Steinberg Seidel despite not having been supplied by Plaintiff. The provenance, recipients, dates, and nature of the photographs require evidentiary substantiation.

112. LaPonzina's unauthorized access was the first identified intrusion. Seidel's ensuing use of nonpublic information supplied the campaign's primary mechanism. O'Dowd and Lyons participated in the harassment that followed, including activity that Plaintiff connects to the disparagement of his Jewish religious observance under the central guidance of Seidel.

## XIII. CONFIDENTIAL MEDICAL INFORMATION AND ALLEGED INTENT TO CAUSE PERMANENT HARM

113. Plaintiff had a preexisting medical condition.

114. Plaintiff possessed a confidential medical evaluation concerning that condition in private records and electronic storage.

115. Plaintiff did not provide the evaluation or its confidential substantive contents to Steinberg Seidel.

116. Plaintiff alleges that Steinberg Seidel nevertheless later manifested knowledge corresponding to confidential medical information, as well as other PII, and used medical information concerning Plaintiff in statements or conduct directed toward him.

117. Plaintiff alleges that the medical information was not merely possessed. It was deliberately exploited to identify and intensify pressure upon a private vulnerability.

118. Plaintiff alleges that making him medically worse was an intended objective rather than a collateral consequence.

119. Plaintiff further alleges that lasting or permanent injury was itself among the results Steinberg Seidel intended to produce.

120. Plaintiff alleges intended deterioration in ordinary functioning, concentration, legal education, professional development, and ability to attend to necessary affairs.

121. Plaintiff alleges interference with appropriate medical care and assessment and alleges inaccurate medical conclusions or misdiagnosis arising in circumstances where third parties observed symptoms without knowing the alleged concealed conduct contributing to it.

122. Plaintiff alleges a destructive feedback mechanism: concealed conduct caused visible symptoms; outsiders unaware of the concealed circumstances saw only the symptoms; the symptoms could then be attributed to Plaintiff himself; and his reports became easier to dismiss.

123. Plaintiff alleges that Steinberg Seidel understood or exploited that dynamic.

124. Plaintiff alleges that the course was continued despite notice of medical consequences and despite a grave foreseeable risk of catastrophic injury or death.

125. The evaluation details are omitted from the public pleading and will be supplied through a protected procedure if necessary.

## XIV. RECENT DEMANDS TO STOP AND CONTINUING COURSE

126. Plaintiff repeatedly sought complete disengagement and cessation of unwanted involvement.

127. During 2026, including in the months preceding this Complaint, Plaintiff sent multiple written communications directly to Steinberg Seidel instructing her to stop and disengage.

128. Those communications conveyed that the alleged involvement was unwanted and harmful.

129. Steinberg Seidel did not provide Plaintiff a substantive assurance that all alleged involvement, monitoring, use of private information, and third-party activity connected to her would cease.

130. Plaintiff alleges that manifestations of unwanted involvement continued into the recent period as recently as November 13, 2026.

131. Plaintiff therefore alleges that the course is not merely historical and that voluntary requests for cessation have failed.

132. Plaintiff alleges that continuation after direct written notice materially supports an inference of actual malice, destructive intent, and conscious disregard of the grave consequences already being reported.

## XV. MATTHEW S. STURTZ AND RELATED NONPARTY RECORDS

133. During 2025, Matthew S. Sturtz represented Sarah Steinberg Seidel in proceedings involving Plaintiff while associated with Nelson Mullins Riley & Scarborough LLP.

134. Materials submitted or communicated on Seidel's behalf reflected knowledge of private information that Plaintiff had not supplied to Sturtz.

135. Plaintiff notified Sturtz and his then-firm of concerns over the origin and use of confidential information. Sturtz's receipt, retention, transmission, or independently wrongful use of that information forms the basis of the claim against him.

136. The claim does not arise from legitimate legal representation or protected advocacy. It concerns conduct independently actionable under Maryland law, including knowing assistance in the misuse of material obtained without authorization.

137. Sturtz left Nelson Mullins effective December 31, 2025. Nelson Mullins is not a defendant in this action; it remains a possible nonparty custodian of relevant historical correspondence, devices, and electronic records.

138. Preservation and appropriately limited discovery of those nonparty records are requested to identify how private information entered the professional communications and whether it was further transmitted or used.

## XV-A. AMY AND SCOTT STEINBERG - ALLEGED FUNDING AND PRACTICAL SUPPORT OF THE COURSE

139. Amy and Scott Steinberg supplied financial and practical resources that, on information and belief, enabled communications, accounts, or services used in the alleged course.

140. Seidel described limited personal resources during law school. Plaintiff also identifies family support, alleged wedding expenses, and use of nonpublic identifying information in connection with a family event.

141. Plaintiff alleges that some funds or resources supplied or paid for by the parents may have supported the communications channels, devices, accounts, or other means through which the independently alleged tortious conduct occurred.

142. Each parent is liable for knowing assistance if that parent knew of an underlying tort and substantially supported it; alternatively, negligent provision applies if that parent controlled a resource, knew of a foreseeable risk, and allowed its continued misuse.

143. Ordinary family support alone does not establish an underlying tort or knowledge of wrongful use.

144. Records of each parent's payments, control, notices, and resource-specific links to wrongful acts are necessary to determine each person's responsibility.

145. Plaintiff alleges that many of the underlying conduct may constitute criminal offenses, including unlawful computer access, impersonation, or harassment. This civil action does not charge either parent with a crime or treat any such offense as established; the civil theories depend on actionable torts and each parent's own proven acts.

## XVI. LIFEBRIDGE / SINAI - NOTICE, UNDERTAKING, AND ALLEGED FAILURE TO TAKE APPROPRIATE ACTION

146. LifeBridge Health currently lists Sarah Steinberg Seidel among the members of the Sinai Hospital Board.

147. LifeBridge's current public compliance materials state that its Code of Conduct applies to representatives including members of boards of directors, that everyone is responsible for compliance, and that compliance-related concerns are reviewed to determine whether they should be investigated by Corporate Compliance or another appropriate department.

148. On or about June 24, 2026, Plaintiff submitted a formal complaint concerning a current Sinai Hospital/LifeBridge board member.

149. Plaintiff expressly stated that the board member's own conduct, not merely conduct of her spouse, was implicated and identified privacy, medical-privacy, governance, compliance, retaliation, safety, and preservation concerns.

150. Plaintiff requested intake, preservation, and referral to an appropriate compliance or board-governance authority.

151. On June 25, LifeBridge's Chief Compliance Officer asked Plaintiff to identify the board member "so we can take action."

152. Plaintiff asked how the process would operate because the allegations were sensitive and involved a current board member.

153. On July 2, LifeBridge stated that it would be "happy to investigate" but required the identity of the board member and relevant factual information.

154. Plaintiff relied upon that representation by identifying Steinberg Seidel and supplying the detailed information requested.

155. On July 3, Plaintiff identified allegations concerning stalking or harassment, retaliation, privacy intrusion, medical and patient-related information, personally identifying information, safety, governance, conflicts, preservation, and possible misuse of institutional records or access.

156. Plaintiff specifically requested preservation and review of access logs, audit logs, disclosure records, metadata, privacy-office records, patient-rights records, governance records, board-related communications, security records, internal analyses, and communications concerning whether to investigate, decline, route, restrict access, refer, or escalate.

157. Plaintiff did not demand that LifeBridge/Sinai presume the allegations true. He requested a threshold process capable of testing whether matters within the institutions' own control were implicated.

158. By July 9, LifeBridge had confirmed preservation but, according to Plaintiff, did not identify a completed or ongoing medical-record access review, audit-log examination, governance review, conflict review, recusal analysis, access restriction, independent investigation, or comparable substantive protective action.

159. LifeBridge instead stated in substance that, absent direct specific allegations involving activity at Sinai Hospital, the matter appeared more like a private matter and that board-member issues would be addressed if and when a court or regulatory body determined wrongdoing.

160. On or about July 16, 2026, Plaintiff issued a preservation notice and again demanded retention of potentially relevant audit, access, and communications records.

161. On October 7, 2026, Plaintiff sent a formal administrative complaint and renewed requests for institutional action.

162. On October 21, 2026, Plaintiff sent a supplemental notice addressing alleged continuing retaliation.

163. On October 26, 2026, Plaintiff sent a further demand concerning what he viewed as LifeBridge/Sinai's failure to take meaningful action.

164. Plaintiff alleges that the response created a circular institutional problem because many of the facts necessary to determine whether LifeBridge/Sinai systems, access privileges, records, board communications, or conflicts were implicated were uniquely or substantially within the institutional Defendants' possession.

165. Plaintiff alleges that, after inviting and undertaking intake, requesting sensitive identifying and factual information, publicly representing that compliance concerns will be reviewed, and confirming preservation, LifeBridge/Sinai failed to exercise reasonable care in completing or routing that limited undertaking.

166. Plaintiff alleges that the failure left a continuing privacy, access, governance, and safety risk unresolved while Steinberg Seidel remained publicly associated with Sinai Hospital.

167. Plaintiff seeks discovery concerning whether Plaintiff's medical record or other LifeBridge-controlled information was searched, viewed, accessed, altered, exported, disclosed, or otherwise handled by any person lacking lawful authorization.

168. Plaintiff does not presently allege as established fact that Steinberg Seidel personally used hospital credentials to enter his electronic health record. He alleges that the institution controls objective evidence capable of confirming or disproving that possibility and that the evidence should be preserved and examined.

169. Plaintiff further seeks discovery concerning governance conflicts, internal routing, recusal, communications, and decision-making bearing upon the institutional response.




Figure 2. LifeBridge / Sinai Notice and Response Chronology. Summary orientation only; the underlying correspondence and numbered allegations control.

## XVII. RELATIONSHIP TO PRIOR AND RELATED PROCEEDINGS

170. Plaintiff previously filed Doe v. University of Baltimore School of Law, et al., Civil Action No. 1:26-cv-01903-BAH in this Court.

171. Steinberg Seidel was originally named in that action in a short Maryland intentional-infliction-of-emotional-distress count alleging generally that she used stolen data for cyberstalking and search manipulation.

172. On July 22, 2026, the Court dismissed that count at screening because the pleading failed sufficiently to particularize the nature, intensity, duration, and disabling effects of Plaintiff's distress.

173. Plaintiff affirmatively discloses that ruling.

174. The present Complaint asserts a distinct federal Stored Communications Act theory against Accessor Does; pleads the alleged Google-hosted mechanism and progressive discovery; describes confidential medical-evaluation information; identifies recent stop demands; alleges later LifeBridge/Sinai institutional conduct; and supplies a materially more particularized injury and defendant-specific structure.

175. To the extent earlier events overlap, they are pleaded as context, motive, notice, discovery chronology, cumulative effect, and evidence relevant to later conduct rather than to obtain duplicate recovery.

176. Plaintiff recognizes that claim-splitting, preclusion, and supplemental-jurisdiction questions must be determined by the actual operative pleadings, parties, judgments, and dates.

## XVIII. PARTICULARIZED INJURY

177. Plaintiff's alleged injury substantially exceeds embarrassment, anger, annoyance, or transient distress.

178. Plaintiff alleges prolonged aggravation of a preexisting medical condition leading to misdiagnosis and potentially permanent injury.

179. Plaintiff alleges impairment of functioning.

180. Plaintiff alleges disruption of his legal education and professional development.

181. Plaintiff alleges that extraordinary time and attention were diverted to personal safety, investigation, documentation, account security, preservation, reporting, and attempts to stop the conduct.

182. Plaintiff alleges interference with appropriate medical care and assessment and inaccurate medical conclusions or misdiagnosis resulting from circumstances in which third parties observed his symptoms without knowing the alleged concealed conduct contributing to it.

183. Plaintiff alleges costs and losses associated with obtaining records, securing accounts, preserving evidence, investigating unauthorized access, responding to alleged impersonation or misuse, and pursuing protective remedies.

184. Plaintiff alleges continuing injury because he does not know every person who received his information without his authorization.

185. Plaintiff alleges that continued conduct against a person already seriously affected created a grave foreseeable risk of permanent injury or death and that permanent injury was, as to Steinberg Seidel and her husband, a cruelly intended result.

**COUNT I - STORED COMMUNICATIONS ACT**

**18 U.S.C. §§ 2701 AND 2707**

**Against Dean G. LaPonzina and Accessor Does 1-3**

186. Plaintiff incorporates the preceding allegations.

187. Plaintiff was the subscriber and authorized user of the private Google account at issue.

188. Google provides an electronic communication service through Internet-connected facilities, and Plaintiff remotely stored and accessed communications and files through Google systems.

189. Dean G. LaPonzina and Accessor Does 1-3 lacked authorization to enter Plaintiff's Google account or obtain its protected contents.

190. LaPonzina and Accessor Does 1-3 intentionally accessed, without authorization, a facility through which an electronic communication service is provided and thereby obtained one or more communications in electronic storage.

191. No exception under 18 U.S.C. § 2701(c) authorized the alleged access.

192. Plaintiff alleges actual injury including invasion of electronic privacy, loss of control over confidential information, investigation and security expenses, and consequential harm from later use of the information.

193. Plaintiff alleges that the action is timely under 18 U.S.C. § 2707(f) because he did not discover and did not have a reasonable opportunity to discover the particular provider-side violation and recipient chain more than two years before filing.

194. Plaintiff recognizes that under Van Alstyne v. Electronic Scriptorium, Ltd., 560 F.3d 199, 204-09 (4th Cir. 2009), the availability of the statutory minimum damages depends upon proof of actual damages; Plaintiff pleads actual damages and seeks only remedies supported by the evidence and controlling law.

195. Plaintiff seeks equitable or declaratory relief, actual damages, profits attributable to the violation where proven, punitive damages for willful or intentional conduct where authorized, recoverable litigation costs, and all other relief available under § 2707.

**COUNT II - UNAUTHORIZED COMPUTER ACCESS**

**Md. Code, Criminal Law § 7-302**

**Against Dean G. LaPonzina and Accessor Does 1-3**

196. Plaintiff incorporates the preceding allegations.

197. Maryland Criminal Law § 7-302 prohibits specified intentional, willful, unauthorized access to computers, computer systems, services, networks, and databases and separately prohibits copying or possessing contents of a computer database accessed in violation of the statute.

198. Section 7-302(g) authorizes a civil action by a person suffering a specific and direct injury and does not require a criminal conviction.

199. LaPonzina and Accessor Does intentionally accessed Plaintiff's computer, related account, service, system, or remotely maintained database without authorization and obtained or copied private data.

200. Plaintiff alleges specific and direct injury, including investigation and security costs, loss of control over private information, and consequential injury from its alleged use.

201. Plaintiff invokes Maryland's discovery rule and applicable concealment principles.

202. Plaintiff seeks actual damages, reasonable attorney's fees and court costs where available, and all relief authorized by § 7-302(g).

**COUNT III - INVASION OF PRIVACY: INTRUSION UPON SECLUSION**

**Against Dean G. LaPonzina, Accessor Does 1-3, and Sarah Steinberg Seidel**

203. Plaintiff incorporates the preceding allegations.

204. Plaintiff maintained a reasonable expectation of privacy in his private Google environment, uploaded files, photographs, personally identifying information, confidential complaints, medical information, communications, and private affairs.

205. LaPonzina and Accessor Does intruded into Plaintiff's private electronic affairs without permission.

206. Unauthorized entry into another person's private electronic environment and acquisition of medical, identifying, and complaint information would be highly offensive to a reasonable person.

207. To the extent discovery establishes that Steinberg Seidel procured, encouraged, directed, joined, or knowingly participated in the acquisition itself, as distinct from later receipt, Plaintiff alleges joint liability for the intrusion.

208. Plaintiff suffered actual injury proximately caused by the alleged intrusion.

## COUNT IV - UNLAWFUL ACQUISITION, DISCLOSURE, OR USE OF CONFIDENTIAL MEDICAL-RECORD INFORMATION

### Md. Code, Health-General § 4-309

### Against Sarah Steinberg Seidel and Medical-Record Does

209. Plaintiff incorporates the preceding allegations.

210. Plaintiff possessed a confidential medical evaluation concerning a serious medical condition and did not authorize Steinberg Seidel or any Medical-Record Doe to obtain, disclose, or use a covered medical record in violation of Maryland law.

211. Plaintiff alleges on information and belief that information derived from a covered medical record was requested or obtained under false pretenses or through deception, or was disclosed in violation of Maryland's medical-record confidentiality subtitle.

212. Plaintiff alleges that Steinberg Seidel knowingly possessed or used resulting confidential medical information for malicious harm.

213. Maryland Health-General § 4-309(c) addresses requests or obtaining of medical records under false pretenses or through deception and disclosure in violation of the subtitle, and § 4-309(f) provides actual-damages liability for a knowing violation.

214. Plaintiff alleges actual damages including medical harm, disruption of care, functional impairment, misdiagnosis attributable to her malicious course and consequential losses.

215. This Count is pleaded in the alternative and applies only to the extent discovery confirms that the information at issue came from a covered medical record and was obtained or disclosed by a method reached by the statute.

**COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**Against Sarah Steinberg Seidel, Dean G. LaPonzina, Kaitlin O'Dowd, and Kaitlyn N. Lyons**

216. Plaintiff incorporates the preceding allegations.

217. Maryland recognizes intentional infliction of emotional distress where the defendant acts intentionally or recklessly, the conduct is extreme and outrageous, the conduct causes the plaintiff's distress, and the distress is severe. Harris v. Jones, 281 Md. 560, 566-67, 380 A.2d 611 (1977).

218. The extreme character of conduct may be heightened where an actor knows of a particular susceptibility and exploits it. Plaintiff alleges precisely that form of targeted exploitation.

219. Plaintiff alleges that Steinberg Seidel knowingly acquired or benefited from nonpublic information concerning a medical vulnerability, concealed its provenance, and used that informational advantage to personalize a multi-year course of monitoring or harassment, deception, third-party instrumentalization, reputational interference, and victim-aggressor inversion.

220. Plaintiff alleges that the course persisted for approximately four years because Steinberg Seidel repeatedly presented herself as the victim while persons around her accepted or reinforced that account, thereby obscuring the alleged antecedent conduct and enabling continuation.

221. Plaintiff further alleges that the March 2026 harassment course-of-conduct charge against Steinberg Seidel's husband is relevant contextual evidence for discovery into whether multiple alleged courses directed toward Plaintiff were coordinated, informationally connected, or mutually reinforcing, while expressly recognizing that the charge itself proves neither Zachary Seidel's guilt nor Steinberg Seidel's liability.

222. Plaintiff alleges that severe medical deterioration and permanent harm were directly intended objectives, not incidental consequences and that Seidel has found the harassment comical and funny.

223. Plaintiff alleges repeated direct demands that Steinberg Seidel stop and disengage and alleges that the course continued after she knew serious medical harm was being attributed to it.

224. Plaintiff alleges that the conduct was extreme and outrageous, was undertaken with actual malice, caused or materially aggravated severe medical and emotional injury, and produced distress and functional impairment of a degree no reasonable person should be expected to endure.

225. Plaintiff seeks compensatory and punitive damages and appropriate prospective relief.

226. LaPonzina's unauthorized computer use and O'Dowd's and Lyons's participation in the subsequent targeted course compounded the injury caused by Seidel's continuing conduct. The harassment was directed at Plaintiff's privacy, religious observance, reputation, and ability to obtain relief.

**COUNT VI - KNOWING PARTICIPATION IN OR FURTHERANCE OF UNDERLYING TORTIOUS CONDUCT**

**Against Matthew S. Sturtz**

227. Plaintiff incorporates the preceding allegations.

228. Plaintiff alleges that Sturtz possessed or used particular nonpublic information concerning Plaintiff that Plaintiff had not provided him.

229. Plaintiff alleges that Sturtz knew, or after direct notice had reason to investigate, whether the information had been obtained or transmitted through unlawful means.

230. Plaintiff alleges that Sturtz thereafter knowingly furthered independently tortious conduct involving the information, to the extent proven through nonprivileged acts outside the protected core of legitimate advocacy.

231. This Count does not challenge lawful representation, privileged communications, or the mere filing of arguments on behalf of a client.

232. Plaintiff seeks liability only for independently actionable conduct proved to fall outside protected advocacy and to satisfy the elements of an underlying tort or joint-tortfeasor theory under Maryland law.

## COUNT VII - NEGLIGENT PERFORMANCE OF AN UNDERTAKEN COMPLIANCE, PRIVACY, GOVERNANCE, AND SAFETY REVIEW

**Against LifeBridge Health, Inc. and Sinai Hospital of Baltimore, Inc.**

233. Plaintiff incorporates the preceding allegations.

234. LifeBridge/Sinai publicly maintained compliance, privacy, governance, security, and board-related functions applicable to board members and publicly represented that compliance concerns would be reviewed for investigation or routing.

235. LifeBridge's Chief Compliance Officer affirmatively requested the board member's identity "so we can take action" and later stated that the institution would be "happy to investigate" once identifying and factual information was supplied.

236. Plaintiff relied upon that undertaking by supplying Steinberg Seidel's identity and detailed sensitive information concerning medical privacy, safety, access, governance, conflicts, alleged harassment, and preservation.

237. LifeBridge/Sinai possessed unique or superior access to their own audit logs, medical-record access histories, privacy records, internal communications, board files, security records, governance information, and access privileges.

238. LifeBridge/Sinai confirmed preservation but allegedly failed to conduct, identify, or appropriately route a meaningful threshold review of those matters and instead deferred board-member action pending an outside court or regulatory determination.

239. Under Maryland law, one who undertakes to render services necessary for another's protection may be liable for negligent performance where the negligence increases the risk of harm or harm results from reliance. See Muthukumarana v. Montgomery County, 370 Md. 447, 486-88, 805 A.2d 372 (2002) (discussing Restatement (Second) of Torts § 323).

240. Plaintiff alleges that the requested information and undertaken process induced him to participate and that negligent completion or routing left potentially dangerous access, privacy, or governance issues unexamined.

241. Plaintiff alleges continuing injury after actual notice and seeks damages and prospective relief only to the extent duty, undertaking, reliance or increased risk, breach, causation, and injury are proven.

## COUNT VIII - DIRECT NEGLIGENCE IN CONTROLLED INSTRUMENTALITIES; ALTERNATIVE JOINT-TORTFEASOR LIABILITY FOR KNOWING ASSISTANCE TO UNDERLYING TORTS

**Against Amy Steinberg and Scott Steinberg**

242. Plaintiff incorporates the preceding facts and the distinct conduct of Amy and Scott Steinberg.

243. Amy and Scott Steinberg supplied resources used in the course. Underlying torts include the intrusion, actionable medical-information misuse, and intentional infliction of emotional distress in Counts III through V.

244. Knowing assistance arises where a parent knew of an underlying tort and substantially provided resources enabling it. See Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc., 340 Md. 176, 199 (1995); Manikhi v. Mass Transit Administration, 360 Md. 333, 360 n.6 (2000).

245. Alternatively, direct negligence rests on a parent's right to control an identified device or service, specific notice of harmful misuse, continued provision, and resulting injury. Broadwater v. Dorsey, 344 Md. 548, 558-65 (1997).

246. Evidence concerning resource control, payments, notice, and causal use identifies which parent was responsible for particular conduct.

247. Plaintiff seeks damages for each parent's own proven negligent provision or knowing, substantial assistance to an underlying tort, without duplicate recovery.

**COUNT IX - RELIGIOUSLY MOTIVATED HATE CRIMES; CIVIL ACTION**

**Md. Code, Criminal Law §§ 10-304(1)(i) AND 10-309**

**Against Sarah Steinberg Seidel, Dean G. LaPonzina, Kaitlin O'Dowd, and Kaitlyn N. Lyons**

248. This Count incorporates the foregoing allegations and seeks relief under Maryland Criminal Law §§ 10-304(1)(i) and 10-309 against Sarah Steinberg Seidel, Dean G. LaPonzina, Kaitlin

O'Dowd, and Kaitlyn N. Lyons for their respective participation in religiously motivated unlawful conduct directed toward Plaintiff.

249. Plaintiff observes Orthodox Judaism. The campaign targeted his religion through criticism and mockery of Jewish religious observance, religious clothing, prayer, dietary requirements, and requests for religious accommodation. Jewish religious themes recurred in the conduct directed toward him. His religious beliefs and practices were a substantial motivating factor, not incidental background.

250. Dean G. LaPonzina used Plaintiff's computer without permission while Plaintiff was away for religious observance during spring 2022. The resulting intrusion into Plaintiff's private electronic environment, and the ensuing acquisition or movement of private information, formed the initial stage of the course. This Count attributes to LaPonzina the unauthorized computer-access conduct identified under Maryland Criminal Law § 7-302 and its religion-directed consequences.

251. Sarah Steinberg Seidel obtained or exploited confidential photographs, medical information, and other nonpublic material, and employed impersonation, third parties, and repeated harassment after demands for disengagement. She **directly mocked** Plaintiff's religious requests and continued a course of conduct using his Orthodox Jewish identity and religious practices to personalize the harm. The repeated unwanted conduct and electronic activity constitute the asserted predicates of criminal harassment and electronic harassment under §§ 3-803 and 3-805.

252. Kaitlin O'Dowd participated in the campaign of harassment that followed the unauthorized computer incident. Her participation formed part of the repeated unwanted conduct directed at Plaintiff's Orthodox Jewish observance, religious dress, and religious identity. This Count seeks civil liability for her own acts within that course of religiously targeted harassment.

253. Kaitlyn N. Lyons participated in the same post-access campaign of harassment. The conduct attributed to Lyons furthered the repeated targeting of Plaintiff's Orthodox Jewish practices and identity and contributed to its persistence. This Count seeks civil liability for her own acts within that course of religiously targeted harassment.

254. The unauthorized computer access and malicious or electronic harassment pleaded above constitute the underlying criminal conduct for § 10-304(1)(i). The religiously directed nature of the conduct establishes the claimed motivation wholly or in substantial part because of Plaintiff's religious beliefs. Liability is sought against each named Defendant for that Defendant's acts constituting or knowingly furthering the prohibited conduct.

255. The acts caused loss of privacy, medical and functional injury, reputational damage, investigation expenses, and continuing risk of misuse of nonpublic information. Under § 10-309, Plaintiff seeks compensatory economic and noneconomic damages, enhanced damages to the extent permitted, costs, statutory fees, and injunctive relief restraining further religiously motivated harassment and unlawful exploitation of his information.

## XIX. CONCERTED CONDUCT, ACTUAL MALICE, AND PUNITIVE DAMAGES

256. Plaintiff does not plead civil conspiracy as a substitute for an underlying tort.

257. Agreement, knowing cooperation, or substantial assistance among Steinberg Seidel, LaPonzina, O'Dowd, Lyons, Sturtz, and Accessor Does in obtaining or exploiting private information supports the joint liability Maryland law recognizes for an underlying actionable tort.

258. Plaintiff alleges actual and extraordinary malice against Steinberg Seidel based upon alleged conscious wrongdoing, intent to cause permanent harm, exploitation of medical

vulnerability, concealment, four-year persistence, use of third parties, victim-aggressor inversion, and continuation after direct demands to stop.

259. Plaintiff alleges actual malice against Sturtz or any other participant only to the extent evidence establishes knowing participation in the destructive purpose alleged.

260. Plaintiff does not seek punitive damages against an institutional Defendant for ordinary negligence absent evidence satisfying Maryland's heightened punitive-damages standard.

261. As to Amy and Scott Steinberg, Plaintiff seeks secondary liability only if evidence establishes knowing, substantial assistance to an underlying tort or an otherwise legally sufficient basis for direct negligence. Plaintiff does not infer a conspiratorial agreement solely from parenthood, ordinary financial support, or the inability to identify the provenance of another person's resources.

## XX. CONTINUING THREAT, PRESERVATION, AND LAW-ENFORCEMENT REFERRAL

262. Plaintiff does not know every person, device, account, or system possessing copies of his private information.

263. Plaintiff alleges an ongoing risk of further use, disclosure, impersonation, monitoring, harassment, reputational manipulation, or exploitation of confidential information.

264. Repeated requests for cessation failed and the alleged distribution of private material leaves a continuing risk of misuse.

265. Protective boundaries, preservation, and source tracing are needed instead of continued reliance on voluntary disengagement.

266. Money damages alone cannot restore control over information remaining in unknown hands or identify the persons responsible for provider-side access.

267. Plaintiff seeks preservation during litigation and Court-supervised return, segregation, or deletion of unlawfully retained information following adjudication.

268. Focused early discovery is requested to identify accessors and preserve expiring records.

269. Relevant records include Google access logs, device and IP metadata, professional communications, and Sinai/LifeBridge audit and medical-record access histories.

270. Plaintiff asks the Court to refer the evidentiary record concerning suspected unauthorized computer access, stalking, harassment, identity impersonation, religiously motivated offenses, and medical-information misuse to the United States Attorney for the District of Maryland and the Federal Bureau of Investigation, and to refer documented attorney conduct warranting disciplinary inquiry to the Maryland Attorney Grievance Commission.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that the Court:**

A. Enter judgment in Plaintiff's favor on each claim established by the evidence;

B. Declare that any proven intentional unauthorized access to Plaintiff's protected Google-hosted communications violated 18 U.S.C. § 2701;

C. Award all relief authorized by 18 U.S.C. § 2707, subject to the statute and controlling precedent;

D. Award actual damages and other relief available under Md. Code, Criminal Law § 7-302(g) and Health-General § 4-309 where violations are established;

E. Award compensatory damages for legally cognizable medical, functional, educational, professional, privacy, and consequential injuries;

F. Award punitive damages against any Defendant for whom Plaintiff proves the state of mind required by applicable law;

G. Enter narrowly tailored preliminary and permanent injunctive relief prohibiting further unauthorized access to, possession of, use of, disclosure of, transmission of, impersonation through, or exploitation of Plaintiff's private information;

H. Order preservation of relevant electronically stored information, access logs, audit logs, account records, metadata, communications, devices, firm records, institutional records, and medical-record access histories;

I. Permit appropriately tailored early discovery necessary to identify Accessor Does and other unknown participants and to prevent loss of relevant records;

J. Where appropriate, order an independently supervised forensic review of relevant LifeBridge/Sinai medical-record access and audit histories to determine whether Plaintiff's information was searched, viewed, accessed, altered, exported, disclosed, or transmitted without authorization;

K. After discovery and adjudication, order the return, segregation, deletion, destruction, or other lawful disposition of copies of Plaintiff's information found to have been obtained or retained unlawfully;

L. Refer the record of potentially criminal conduct to the United States Attorney for the District of Maryland and Federal Bureau of Investigation, and attorney-conduct evidence to Maryland's Attorney Grievance Commission for independent review;

M. Award pre-judgment and post-judgment interest, costs, and any fees expressly authorized by statute;

N. Grant such other and further relief as the Court deems just and proper;

O. Enter judgment against Amy Steinberg and/or Scott Steinberg to the extent the evidence establishes that particular Defendant's own negligent provision of a controlled instrumentality or

knowing, substantial participation in a separately pleaded underlying tort, including only damages actually caused by such participation;

P. Require preservation, subject to appropriate scope and later discovery orders, of nonprivileged records concerning any identified communications services, devices, accounts, payments, and transmissions actually used in the alleged conduct and within each Defendant's possession, custody, or control.

Q. Award the available remedies under Maryland Criminal Law § 10-309 for religiously motivated hate-crime conduct by Sarah Steinberg Seidel, Dean G. LaPonzina, Kaitlin O'Dowd, and Kaitlyn N. Lyons;

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on every issue so triable.

JOHN DOE
Plaintiff

Dated: November 13, 2026